WILLIE D. GILBERT, II v. THE NORTH CAROLINA STATE BAR

No. 41PA07

(Filed 20 March 2009)

**1. Appeal and Error— appealability—prosecution of attorney enjoined—protection of bar and public—substantial right**

An immediate appeal could be taken from an injunction prohibiting disciplinary prosecution of an attorney before the Disciplinary Hearing Commission, despite its interlocutory nature, where it affected the State Bar's substantial right to carry out its duties to protect the bar and the public.

**2. Malicious Prosecution— notice—vindictive prosecution in civil case—reviewed as malicious prosecution**

Plaintiff's complaint under 42 U.S.C. § 1983 for vindictive prosecution by the State Bar could have been dismissed because

vindictive prosecution is limited to criminal cases. However, North Carolina is a notice pleading state, the import of the complaint is unmistakable, and defendant responded as if plaintiff had pleaded malicious prosecution. The matter is reviewed as alleging malicious prosecution.

**3. Jurisdiction— subject matter—42 U.S.C. § 1983—pleading defect**

Defendant's argument that the superior court lacked subject matter jurisdiction to hear plaintiff's 42 U.S.C. § 1983 action because defendant's disciplinary prosecution of plaintiff was still pending identifies a pleading defect in plaintiff's procedural due process claim rather than implicating a defect in the trial court's jurisdiction.

**4. Civil Rights— due process—repeated disciplinary hearings by State Bar**

Plaintiff did not allege a due process violation for which relief might be granted under 42 U.S.C. § 1983 where his allegation concerned malicious prosecution in repeated disciplinary actions against him by the State Bar. Any right plaintiff has to be free of malicious prosecution does not arise from substantive due process rights under the Fourteenth Amendment, and postdeprivation remedies adequately safeguard plaintiff's right to procedural due process.

Justice TIMMONS-GOODSON dissenting.

Justice HUDSON dissenting.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, 180 N.C. App. 690, 639 S.E.2d 143 (2006), dismissing defendant's appeal from a judgment entered on 12 September 2005 by Judge Milton F. Fitch, Jr. in Superior Court, Wilson County. Heard in the Supreme Court 11 December 2007.

*Michaux & Michaux, P.A., by Eric C. Michaux, for plaintiff-appellee.*

*North Carolina State Bar, by Katherine E. Jean, Counsel, and David R. Johnson and A. Root Edmonson, Deputy Counsel, for defendant-appellant.*

EDMUNDS, Justice.

In this case, plaintiff Willie Gilbert, a licensed attorney, alleges that defendant North Carolina State Bar acted vindictively when it filed sequential actions against him. The questions before this Court are whether plaintiff's complaint properly presents a claim under 42 U.S.C. § 1983 for deprivation of his right to due process under the Fourteenth Amendment to the Constitution of the United States and whether the trial court's permanent injunction of defendant's administrative action was proper. As to the first question, we conclude that plaintiff failed to state a § 1983 claim because (1) *substantive* due process does not provide an individual right to be free from either vindictive or malicious prosecution of an administrative action, and (2) a plaintiff's right to *procedural* due process under the Fourteenth Amendment is not violated by the tortious conduct of a state actor until and unless the State fails to provide an adequate remedy. As to the second question, because plaintiff must allow the State an opportunity to remedy the alleged deprivation of a protected right before he can state a viable § 1983 claim based on an alleged violation of his right to procedural due process, the trial court should not have imposed a permanent injunction. We vacate the decision of the Court of Appeals dismissing defendant's appeal and remand to that court for further remand to Superior Court, Wilson County, with instructions to dissolve the permanent injunction, dismiss plaintiff's substantive due process claim with prejudice, and dismiss plaintiff's procedural due process claim without prejudice.

Between February 2000 and September 2003, defendant filed three complaints against plaintiff. Two were administrative actions (*Gilbert I* and *Gilbert III*) that were brought before defendant's Disciplinary Hearing Commission (DHC), while the third was a civil action (*Gilbert II*) brought in District Court, Wake County, to recover money paid to one of plaintiff's clients by defendant's Client Security Fund (CSF). Defendant filed *Gilbert I* on 15 February 2000, alleging that plaintiff violated numerous provisions of the Revised Rules of Professional Conduct (RRPC) during his representation of three clients between 1997 and 1999. After a four-day hearing held on 17-18 July 2000 and 18-19 September 2000, the DHC entered an Order of Discipline concluding that plaintiff had violated Rules 1.5, 1.7, 1.15-2(h), 8.4(b), 8.4(c), 8.4(d), and 8.4(g) of the RRPC. The DHC suspended plaintiff's license to practice law for five years, but stayed the last three years of the suspension upon enumerated conditions. The North Carolina Court of Appeals affirmed the DHC Order of Discipline, *N.C. State Bar v. Gilbert*, 151 N.C. App. 299, 566

S.E.2d 685, 2002 N.C. App. LEXIS 782 (2002) (unpublished), and this Court affirmed the Court of Appeals in a per curiam opinion, 357 N.C. 502, 586 S.E.2d 89 (2003).

Defendant filed *Gilbert II* on or about 18 April 2002, seeking reimbursement on behalf of the CSF for $4,627.43 that had been paid by the CSF to one of plaintiff's clients. Following a bench trial held on 7-8 January 2004, the trial court awarded defendant the double damages allowed by N.C.G.S. § 84-13, for a total of $9,254.86 plus interest. On appeal, the Court of Appeals affirmed the trial court's judgment in part and vacated in part, remanding the matter for additional findings as to plaintiff's affirmative defenses. *N.C. State Bar v. Gilbert*, 176 N.C. App. 408, 626 S.E.2d 877, 2006 N.C. App. LEXIS 574 (2006) (unpublished). On remand, the trial court again entered judgment in favor of defendant. On appeal after remand, the Court of Appeals affirmed the trial court's judgment in part and vacated in part, remanding for recalculation of interest pursuant to N.C.G.S. § 24-5(b). *N.C. State Bar v. Gilbert*, 189 N.C. App. 320, 663 S.E.2d 1 (2008).

Defendant filed *Gilbert III* on 12 September 2003, alleging that plaintiff misappropriated funds from his trust account and failed to pay client funds promptly to third parties. The transactions at issue identified by defendant in its *Gilbert III* complaint occurred in April 1998.

While *Gilbert III* was pending before the DHC, plaintiff filed the instant action in Superior Court, Wilson County, alleging, in part, that defendant was vindictively prosecuting the *Gilbert III* administrative action. Specifically, plaintiff alleged violations of both his substantive and his procedural due process rights. Plaintiff further alleged that the conduct at issue in *Gilbert III* was known or should have been known to defendant before *Gilbert I* was heard by the DHC. Plaintiff sought injunctive and monetary relief under 42 U.S.C. § 1983 and Article I of the North Carolina State Constitution.

On 9 April 2004, the trial court granted plaintiff an *ex parte* temporary restraining order, enjoining defendant from proceeding with further prosecution of *Gilbert III*. At the subsequent hearing on plaintiff's motion for preliminary injunction, defendant argued that the trial court did not have jurisdiction to enjoin a disciplinary action that was pending before the DHC.[1] Plaintiff responded that the the DHC is not

---

1. "Any attorney admitted to practice law in this State is subject to the disciplinary jurisdiction of the [State Bar] Council . . . ." N.C.G.S. § 84-28(a) (2007). "The Council is vested, as an agency of the State, with the authority to . . . investigate and prosecute matters of professional misconduct . . . ." *Id.* § 84-23(a) (2007). The DHC has

**GILBERT v. N.C. STATE BAR**

[363 N.C. 70 (2009)]

authorized to rule on the constitutional questions he raised and that superior court is an appropriate forum in which to bring a claim under § 1983.[2] After considering arguments, the trial court granted plaintiff's request for a preliminary injunction.

Defendant moved to dismiss the complaint on 3 August 2004, and plaintiff moved for summary judgment on 13 October 2004. The trial court treated defendant's motion as one for summary judgment and, after hearing argument, expressed its concern.

> THE COURT: .... [I]t smacks—to me, it smacks in the face of fairness when you have a man that you take a period of time, you go in and you find three people, you prosecute him on those three, and there were six people there at the same time, and instead of prosecuting him on six and doing whatever you want to do to him, you choose to do three of them, have a time of suspension to run, and then come back when that time of suspension runs and says, oh, yes, I got three more that I didn't prosecute you on so I want to now prosecute you on those matters. And that, right or wrong, in my mind is where I have the problem, because—and that's why I used the terms that the State Bar knew or should have known, having done the investigation of the trust account, that those violations were there.

The trial court entered an order on 12 September 2005 granting plaintiff's motion for partial summary judgment on the issue of liability for violation of his Fourteenth Amendment right to due process. The trial court's order permanently enjoined defendant from prosecuting *Gilbert III* and expressly retained jurisdiction over the matter for the purposes of enforcing the injunction, determining compensatory damages, and awarding attorneys' fees.

Defendant appealed. The Court of Appeals concluded that defendant had appealed from an interlocutory order not affecting a substantial right and dismissed defendant's appeal. *Gilbert v. N.C. State Bar*, 180 N.C. App. 690, 639 S.E.2d 143, 2006 N.C. App. LEXIS 2574

---

jurisdiction to "hold hearings in discipline . . . matters, make findings of fact and conclusions of law after these hearings, enter orders necessary to carry out the duties delegated to it by the Council, and tax the costs to an attorney who is disciplined." *Id.* § 84-28.1(b) (2007).

2. The original civil jurisdiction of the superior court division of North Carolina is set forth, in part, by N.C.G.S. § 7A-245(a)(4), which provides: "The superior court division is the proper division without regard to the amount in controversy, for the trial of civil actions where the principal relief prayed is . . . [t]he enforcement or declaration of any claim of constitutional right." N.C.G.S. § 7A-245(a)(4) (2007).

(2006) (unpublished). This Court allowed defendant's petition for discretionary review as to two issues: (1) whether the Court of Appeals erred by dismissing defendant's appeal as interlocutory, and (2) whether the superior court had jurisdiction to enjoin permanently defendant's prosecution of plaintiff in an administrative disciplinary proceeding before the DHC.

[1] We begin with defendant's first issue. Defendant acknowledged in its brief to the Court of Appeals that the trial court's order "may be considered interlocutory," and the Court of Appeals so held. *Gilbert*, 180 N.C. App. 690, 639 S.E.2d 143, 2006 N.C. App. LEXIS 2467, at *7. Defendant argues that the order nevertheless may be appealed immediately because it affects a substantial right. *See* N.C.G.S. §§ 1-277(a), 7A-27(d)(1) (2007).

A substantial right is "a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which [one] is entitled to have preserved and protected by law: a material right." *Oestreicher v. Am. Nat'l Stores, Inc.*, 290 N.C. 118, 130, 225 S.E.2d 797, 805 (1976) (citation and internal quotation marks omitted). We consider whether a right is substantial on a case-by-case basis. "It is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Waters v. Qualified Pers., Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978).

Plaintiff argues that this interlocutory appeal does not affect a substantial right. The Court of Appeals agreed with plaintiff, citing precedent from that court for the proposition that an order of a trial court allowing a party's motion for summary judgment as to liability while retaining jurisdiction over the issue of damages, does not affect a substantial right. *Gilbert*, 180 N.C. App. 690, 639 S.E.2d 143, 2006 N.C. App. LEXIS 2467, at *8. In so doing, the Court of Appeals reasoned that "the most [defendant] will suffer from being denied an immediate appeal is a trial on the issue of damages." *Id.* (internal quotation marks and citation omitted).

Although we express no opinion as to the merits of defendant's *Gilbert III* complaint, we note that the trial court order from which defendant appeals includes a permanent injunction enjoining defendant from prosecuting *Gilbert III*. Ordinarily, "[a] permanent or perpetual injunction issues as a final judgment which settles the rights of the parties, after the determination of all issues raised." *Union*

*Carbide Corp. v. Davis*, 253 N.C. 324, 328, 116 S.E.2d 792, 794-95 (1960) (quoting *Galloway v. Stone*, 208 N.C. 739, 740, 182 S.E. 333, 333 (1935)); *Tomlinson v. Cranor*, 209 N.C. 688, 692, 184 S.E. 554, 556-57 (1936) (holding that the trial court erred in issuing a permanent injunction, which was a final judgment, because issues of material fact should have been determined by the jury). Thus, the permanent injunction issued by the trial court in this case is a remedy that forever prohibits defendant from prosecuting *Gilbert III*. In contrast, no such immediately enforceable remedy issues when a trial court merely enters partial summary judgment in a plaintiff's favor on the question of liability, as in the cases relied on by the Court of Appeals.

We conclude that defendant's right to investigate and prosecute allegations of attorney misconduct is substantial. The State Bar is an agency of the State of North Carolina. N.C.G.S. § 84-15 (2007). Prior to the incorporation of the North Carolina State Bar in 1933, *see id.*, the bar lacked legal autonomy and was not allowed to regulate itself. *See* Thomas W. Davis, President, N.C. Bar Ass'n, The Bar, Its Duties and Burdens, Address Before the North Carolina Bar Association (July 5, 1921), *in* Proceedings of the Twenty-Third Annual Session of the North Carolina Bar Association, 1921, at 6-20. As Chief Justice Stacy noted when he administered the oath of office to the first Bar Council after incorporation:

> The Legislature, in its wisdom, has provided for the incorporation of the State Bar. It has vested in the Council of that Bar, which you are, the authority and the power to administer the act. It may interest you to know that the Legislature has repealed all of the statutes relating to disbarment in the State, and has vested in you the responsibility of making rules and regulations, and administering those rules and regulations relating to the admission and to the discipline and to the disbarment of members of the Bar of this State.

Edwin C. Bryson, *The North Carolina State Bar, 1933-1950*, 30 N.C. St. Bar Q. 8, 12 (1983); *see also Baker v. Varser*, 240 N.C. 260, 267, 82 S.E.2d 90, 95-96 (1954) (The General Assembly created the State Bar "to enable the bar to render more effective service in improving the administration of justice, particularly in dealing with the problem of . . . discipl[in]ing and disbarring attorneys at law."). Thus, the power of the bar to police itself is both a privilege and a responsibility.

Defendant's action in conducting this, or any other investigation, is undertaken pursuant to statute for the benefit of both the legal pro-

GILBERT v. N.C. STATE BAR

[363 N.C. 70 (2009)]

fession and the citizens of North Carolina. When defendant is prevented from carrying out these duties, the bar as well as the public may be at risk. Accordingly, we conclude that defendant's right to carry out these statutory duties is substantial.

Next, we must determine whether defendant's substantial right may be lost or prejudiced if the interlocutory order is not considered on appeal. *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990) ("[T]he deprivation of that substantial right must potentially work injury to [defendant] if not corrected before appeal from final judgment."). The mere fact that a defendant has been enjoined does not constitute such an injury. However, because the trial court's permanent injunction may prevent defendant from executing its statutory duties while plaintiff pursues an improperly pleaded action, an injury arises. *See, e.g., Freeland v. Greene*, 33 N.C. App. 537, 540, 235 S.E.2d 852, 854 (1977) ("The continuance of the injunction in effect and the denial of the motion to dismiss in this case do adversely affect important rights of [defendant North Carolina Board of Transportation] in connection with the performance by [it] of duties imposed by [statute]. We therefore consider this appeal."). In addition, execution of the bar's responsibility to protect the public requires that the bar have the ability timely to respond to allegations of wrongdoing and timely to act where those allegations prove true. As this case illustrates, a trial and subsequent appeal can consume years, leaving the public vulnerable. Accordingly, we conclude that defendant suffers the risk of injury if this interlocutory order is not considered. This interlocutory appeal is not barred.

[2] We now consider defendant's second issue. Plaintiff alleges that defendant prosecuted *Gilbert III* vindictively, as punishment both for his zealous defense of *Gilbert I* and *II* and for exercising his right to appeal the final judgments entered in those actions. Plaintiff further alleges that defendant's vindictive prosecution of *Gilbert III*, an administrative proceeding, gives rise to an independent cause of action under § 1983 for violation of his Fourteenth Amendment right to substantive and procedural due process. However, vindictive prosecution is a doctrine recognized in the context of criminal cases only.[3] In addressing vindictive prosecution, the Supreme Court of the

---

3. In two of the three United States Circuit Court cases cited in Justice Timmons-Goodson's dissent, the doctrine of vindictive prosecution is characterized as an affirmative defense. *Nat'l Eng'g & Contracting Co. v. Herman*, 181 F.3d 715 (6th Cir. 1999); *United States v. One 1985 Mercedes*, 915 F.2d 415 (9th Cir. 1990). The Courts issuing these decisions neither reviewed § 1983 actions nor found a vindictive prosecution of an administrative action that violated the defendant's right to substantive due process.

GILBERT v. N.C. STATE BAR

[363 N.C. 70 (2009)]

United States has considered two issues: (1) It has limited the ability of a judge to impose a more lengthy sentence upon a defendant who successfully appealed, *North Carolina v. Pearce*, 395 U.S. 711, 23 L. Ed. 2d 656 (1969), and (2) it has held that, in a two-tier prosecutorial system such as we have in North Carolina, a prosecutor may not substitute a more serious charge when a defendant seeks a trial de novo on appeal from a lesser charge, *Blackledge v. Perry*, 417 U.S. 21, 40 L. Ed. 2d 628 (1974). Subsequent decisions of the United States Supreme Court have declined to expand the holdings of *Pearce* and *Blackledge*.[4] The Supreme Court of the United States has never applied the theory of vindictive prosecution to a civil action or an administrative proceeding.

We find no contrary cases in North Carolina. As a result, because the theory of vindictive prosecution is limited to criminal cases, we conclude that plaintiff proceeded on an inapplicable theory and that plaintiff's complaint could be dismissed on this ground alone. Nevertheless, North Carolina is a notice pleading state, the import of plaintiff's complaint is unmistakable, and defendant responded as if

---

Although, in *Futernick*, the United States Court of Appeals for the Sixth Circuit listed elements that may comprise a claim for vindictive prosecution of an administrative proceeding, it did so in a footnote to that opinion, which reviewed a plaintiff's *selective prosecution* claim. *Futernick v. Sumpter*, 78 F.3d 1051 (6th Cir. 1996), *abrogated in part by Vill. of Willowbrook v. Olech*, 528 U.S. 562, 145 L. Ed. 2d 1060 (2000) (per curiam). In the intervening ten years, the Sixth Circuit has considered only one other case, also cited by the dissent, in which vindictive prosecution was raised as a defense to an administrative proceeding. *Nat'l Eng'g & Contracting Co.*, 181 F.3d 715. Similarly, the Ninth Circuit opinion cited by the dissent was decided in 1990. *One 1985 Mercedes*, 915 F.2d 415. The analysis undertaken by the Sixth and Ninth Circuits in these isolated decisions has not been adopted by any other United States Circuit Court or by the Supreme Court of the United States.

4. *See Alabama v. Smith*, 490 U.S. 794, 104 L. Ed. 2d 865 (1989) (considering a criminal defendant's direct criminal appeal and holding that no presumption of vindictiveness arises when defendant's first sentence was based upon a guilty plea and the second sentence follows trial); *United States v. Goodwin*, 457 U.S. 368, 73 L. Ed. 2d 74 (1982) (considering a criminal defendant's direct criminal appeal and holding that a defendant is not entitled to a presumption of vindictiveness arising from reindictment on more serious charges after he refused to plead guilty and demanded a jury trial); *Bordenkircher v. Hayes*, 434 U.S. 357, 54 L. Ed. 2d 604 (1978) (considering a criminal defendant's appeal from issuance of writ of habeas corpus and holding that due process is not violated by a defendant's reindictment on more serious charges following an accused's refusal to accept a plea bargain); *Chaffin v. Stynchcombe*, 412 U.S. 17, 36 L. Ed. 2d 714 (1973) (considering a criminal defendant's appeal from denial of writ of habeas corpus and holding that due process is not violated by a jury's recommendation of a higher sentence on retrial); *and Colten v. Kentucky*, 407 U.S. 104, 32 L. Ed. 2d 584 (1972) (considering the defendant's direct appeal from criminal conviction and holding that due process is not violated by a two-tiered criminal system that provides for trial de novo).

plaintiff had pleaded a recognized cause of action, such as malicious prosecution. Malicious prosecution is a theory applicable to criminal, civil, and administrative proceedings that have been instituted with malice and without probable cause. *See, e.g., Carver v. Lykes,* 262 N.C. 345, 352, 137 S.E.2d 139, 145 (1964) ("[O]ne who instigates or procures investigatory proceedings against another before an administrative board which has the power to suspend or revoke that other's license to do business or practice his profession, is liable for the resulting damage if (1) the proceeding was instituted maliciously; (2) without probable cause; and (3) has terminated in favor of the person against whom it was initiated."). It is designed to discourage and remedy the type of prosecutorial misconduct alleged by plaintiff in this case and is consistent with the "bad faith prosecution" language used in the trial court's order. Accordingly, we will review plaintiff's complaint as alleging malicious prosecution.

[3] At the outset, we note that defendant argues that, because *Gilbert III* was still pending before the DHC when plaintiff filed his superior court action, the superior court lacked subject matter jurisdiction to hear plaintiff's § 1983 action. However, defendant's argument does not implicate the trial court's jurisdiction to hear plaintiff's § 1983 claim, which is established by N.C.G.S. § 7A-245(a)(4). As explained below, defendant's argument actually identifies a pleading defect in plaintiff's procedural due process claim. This is not the first time parties mistakenly have identified lack of subject matter jurisdiction as a basis for dismissal of a § 1983 action when, in fact, the actual ground supported by their argument was failure to state a claim for violation of a party's due process rights. In *Snuggs v. Stanly County Department of Public Health,* this Court reviewed a trial court's determination that it lacked subject matter jurisdiction and subsequent dismissal of the plaintiffs' § 1983 claim. 310 N.C. 739, 314 S.E.2d 528 (1984) (per curiam). Observing that the plaintiffs had failed to allege that remedies provided by the State were inadequate, we "elect[ed] to treat the defendants' [Rule 12(b)(1)] motions as motions brought under Rule 12(b)(6)," *id.* at 740, 314 S.E.2d at 529, and remanded the matter to superior court "for the entry of orders under Rule 12(b)(6) dismissing the plaintiffs' claims for failure to state a claim upon which relief may be granted," *id.* at 741, 314 S.E.2d at 529. Following this precedent, we now consider whether plaintiff has alleged a due process violation for which relief may be granted under § 1983.

[4] When Congress enacted 42 U.S.C. § 1983, it conferred upon injured plaintiffs a federal remedy for violations of federal constitu-

tional rights committed by state actors. *E.g.*, *Felder v. Casey*, 487 U.S. 131, 139, 101 L. Ed. 2d 123, 138 (1988). Section 1983 claims may be litigated in either state or federal court. *Howlett v. Rose*, 496 U.S. 356, 358, 110 L. Ed. 2d 332, 342 (1990). Section 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (2000). Liability imposed under § 1983 is expressly conditioned upon deprivation of a federal constitutional right and is distinct from liability arising from commission of a common-law tort. *Paul v. Davis*, 424 U.S. 693, 697-701, 47 L. Ed. 2d 405, 411-14 (1976) (explaining that an ordinary common-law tort claim is not transformed into a § 1983 procedural due process claim simply because the tort is committed by a state actor). Thus, tortious conduct by a state actor may be redressed through a § 1983 action only when it infringes a federal constitutional right. Such tortious conduct is commonly said to give rise to a "constitutional tort." *See, e.g.*, Michael K. Cantwell, *Constitutional Torts and the Due Process Clause*, 4 Temp. Pol. & Civ. Rts. L. Rev. 317, 320 (1995); James J. Park, *The Constitutional Tort Action as Individual Remedy*, 38 Harv. C.R.-C.L. L. Rev. 393, 395-96 (2003).

No definitive test exists for determining whether conduct that establishes the common-law tort of malicious prosecution also violates a federal constitutional right. *See generally* 1 Steven H. Steinglass, *Section 1983 Litigation in State Courts* § 3:2, at 3-3 (2001) (noting that "[m]any of the most difficult questions confronting courts and litigants in § 1983 litigation concern the definition of the underlying constitutional rights, and whether and when conduct that gives rise to state tort actions is also a constitutional violation actionable under § 1983"). United States circuit courts disagree over whether the common-law elements of malicious prosecution are also essential components of a constitutional tort.[5] Nevertheless, all

---

5. *Compare Kjellsen v. Mills*, 517 F.3d 1232, 1237-38 (11th Cir. 2008) (identifying the elements of a § 1983 malicious prosecution claim as co-extensive with the elements of the common law tort), *and Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (listing the elements of a § 1983 malicious prosecution claim as the elements of the common-law tort plus "deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding"), *and Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir.

**GILBERT v. N.C. STATE BAR**

[363 N.C. 70 (2009)]

circuits agree that a plaintiff must show that the alleged malicious prosecution infringes a constitutional right in order to invoke § 1983. Most frequently, the federal constitutional provisions cited in § 1983 claims based upon malicious prosecution are the First and Fourth Amendments and the Equal Protection Clause of the Fourteenth Amendment. *See, e.g., Albright v. Oliver*, 510 U.S. 266, 274-75, 127 L. Ed. 2d 114, 124 (1994) (plurality) (explaining that the Fourth Amendment, not substantive due process, addresses deprivations of liberty resulting from criminal prosecution); *Dombrowski v. Pfister*, 380 U.S. 479, 481-87, 14 L. Ed. 2d 22, 25-29 (1965) (considering a § 1983 action in which the plaintiffs alleged criminal prosecution undertaken for the purpose of silencing speech protected under the First Amendment); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068-70 (9th Cir. 2004) (concluding that the plaintiff stated a claim under § 1983 by alleging prosecution undertaken for the purpose of depriving him of his First Amendment right to freedom of speech and Fourteenth Amendment right to equal protection). In § 1983 actions, the United States Supreme Court consistently distinguishes the protections conferred by the First Amendment, the Fourth Amendment,

---

2003) (stating that the elements of a § 1983 malicious prosecution claim are the elements of the common-law tort plus "post-arraignment seizure"), *and Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001) (supposing that a § 1983 plaintiff must allege the common-law elements of malicious prosecution and "deprivation of a federally-protected right"), *and Poppell v. City of San Diego*, 149 F.3d 951, 961-62 (9th Cir. 1998) (requiring a plaintiff to establish the common-law tort elements of malicious prosecution in addition to deprivation of a constitutional right), *with Gregory v. City of Louisville*, 444 F.3d 725, 750 (6th Cir. 2006) (recharacterizing a plaintiff's § 1983 malicious prosecution claim "as the right under the Fourth Amendment to be free from continued detention without probable cause" and undertaking Fourth Amendment analysis), *cert. denied*, 549 U.S. 1114, 166 L. Ed. 2d 707 (2007), *and Pierce v. Gilchrist*, 359 F.3d 1279, 1290 (10th Cir. 2004) ("rejecting the view that a plaintiff does not state a claim actionable under § 1983 unless he satisfies the requirements of an analogous common law tort"), *and Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (summarizing the rules of its sister circuit courts, concluding that reference to the common-law tort of malicious prosecution "invites confusion," and considering instead whether the alleged conduct "run[s] afoul of explicit constitutional protection"), *cert. denied*, 543 U.S. 808, 160 L. Ed. 2d 10 (2004), *and Newsome v. McCabe*, 256 F.3d 747, 749-50 (7th Cir. 2001) (stating that the elements of the constitutional tort of malicious prosecution, if the constitutional tort exists at all, do not "depend on state law"), *and Lambert v. Williams*, 223 F.3d 257, 260-62 (4th Cir. 2000) (explaining that the common-law elements of a malicious prosecution claim are relevant to a § 1983 malicious prosecution claim only to the extent that they are analogous to a Fourth Amendment violation), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001). *See also Albright v. Oliver*, 510 U.S. 266, 270 n.4, 127 L. Ed. 2d 114, 121 n.4 (1994) (plurality) (acknowledging an "embarrassing diversity of judicial opinion" about "the extent to which a claim of malicious prosecution is actionable under § 1983" (citations and internal quotation marks omitted)).

and the Equal Protection Clause of the Fourteenth Amendment, from the protection supplied by the Due Process Clause of the Fourteenth Amendment. *E.g.*, *Parratt v. Taylor*, 451 U.S. 527, 536, 68 L. Ed. 2d 420, 429 (1981) (reasoning that a plaintiff's § 1983 procedural due process claim "differ[ed] from the claims which were before [the Court] in *Monroe v. Pape*, [365 U.S. 167, 5 L. Ed. 2d 492 (1961)], which involved violations of the Fourth Amendment, and the claims presented in *Estelle v. Gamble*, 429 U.S. 97 [50 L. Ed. 2d 251] (1976), which involved alleged violations of the Eighth Amendment"), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 88 L. Ed. 2d 662 (1986); *see also Edward Valves, Inc. v. Wake Cty.*, 343 N.C. 426, 434, 471 S.E.2d 342, 347 (1996) ("State remedies are only relevant when a Section 1983 action is brought for a violation of procedural due process." (citations omitted)), *cert. denied*, 519 U.S. 1112, 136 L. Ed. 2d 839 (1997).

Plaintiff's malicious prosecution claim is based upon allegations in his complaint that defendant violated both plaintiff's substantive due process rights and his procedural due process rights. As to plaintiff's substantive due process claim, in *Albright v. Oliver*, a plurality of Justices of the United States Supreme Court observed that "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." 510 U.S. at 272, 127 L. Ed. 2d at 122. Accordingly, the Court held that the plaintiff failed to state a § 1983 claim when he alleged that Illinois authorities violated his Fourteenth Amendment right to substantive due process by prosecuting criminal charges against him without probable cause. *Id.* at 268-69, 127 L. Ed. 2d at 120-21. In so holding, the plurality explained that the Fourth Amendment was drafted to address "deprivations of liberty that go hand in hand with criminal prosecutions." *Id.* at 274, 127 L. Ed. 2d at 124. As a result, "with its scarce and open-ended guideposts," *id.* at 275, 127 L. Ed. 2d at 124 (internal quotation marks omitted), "substantive due process may not furnish the constitutional peg on which to hang such a 'tort,' " *id.* at 271 n.4, 127 L. Ed. 2d at 122 n.4. In light of the lack of "guideposts for responsible decisionmaking," and the United States Supreme Court's reluctance to expand the boundaries of substantive due process protection, *see Collins v. City of Harker Heights*, 503 U.S. 115, 125, 117 L. Ed. 2d 261, 273 (1992), we hold that any right plaintiff has to be free of malicious prosecution, including a claim based upon the allegedly malicious prosecution of a civil or administrative matter, does not arise from substantive due process rights under the Fourteenth Amendment.

Turning to plaintiff's procedural due process claim, we observe that, with few exceptions, United States circuit courts have considered the question of whether malicious prosecution infringes on a party's procedural due process rights only in criminal cases, and then only in dicta. *See, e.g., Pierce v. Gilchrist,* 359 F.3d 1279, 1299 (10th Cir. 2004); *Nieves v. McSweeney,* 241 F.3d 46, 53 (1st Cir. 2001). We have found no holding that malicious initiation of a civil administrative proceeding, by itself, inflicts an injury giving rise to a constitutional tort. However, the Second and Tenth Circuit Courts of Appeals have each published one opinion reviewing a § 1983 claim in which a plaintiff alleged that malicious filing of an administrative action violated his or her right to procedural due process.

In *Washington v. County of Rockland,* the United States Court of Appeals for the Second Circuit considered the plaintiff correction officers' claims that a county sheriff maliciously filed unjustified disciplinary charges against them in a civil administrative proceeding: 373 F.3d 310, 313 (2d Cir. 2004). Citing *Albright v. Oliver,* the Court held that a § 1983 action based upon an allegation that the defendant had initiated a malicious prosecution "may not be premised on a civil administrative proceeding" absent a violation of Fourth Amendment rights. *Id.* at 313, 315-17.

In *Becker v. Kroll,* the United States Court of Appeals for the Tenth Circuit considered a plaintiff medical doctor's claim that Utah's Medicaid Fraud Control Unit maliciously filed unjustified civil and criminal charges against her. 494 F.3d 904, 909 (10th Cir. 2007). Construing the plaintiff's complaint liberally, the Court acknowledged that the plaintiff alleged "some injuries resulting from the filing of criminal charges against her that are outside the scope of the Fourth Amendment's substantive and procedural protections," *id.* at 918, such as infringement upon her "liberty interest in being free from unwarranted investigation and prosecution without probable cause" and "a property interest in the integrity of her medical and billing records," *id.* at 919. The Court stated, but did not hold, that "[t]hese injuries might be cognizable as due process violations through a gap in constitutional protection created by *Albright's* limitation of § 1983 malicious prosecution claims to those based on the Fourth Amendment," *id.* at 918, but then disposed of the plaintiff's appeal on alternative grounds.

In light of *Albright v. Oliver* and the apparent uncertainty among United States circuit courts over the extent to which § 1983 supports an action when a plaintiff claims procedural due process violations

based on malicious prosecution, including a claim based on prosecution of a civil or administrative action, we express no opinion whether defendant's conduct infringes a "life, liberty, or property interest" that is protected by the Fourteenth Amendment. Such a holding would be essential to the success of plaintiff's claim because "the Fourteenth Amendment does not require a remedy when there has been no 'deprivation' of a protected interest." *Davidson v. Cannon*, 474 U.S. 344, 348, 88 L. Ed. 2d 677, 683 (1986). Instead, we resolve this issue on an alternative, but settled, legal ground.[6]

Even if this Court accepts plaintiff's argument that defendant's allegedly malicious prosecution of *Gilbert III* affects a constitutionally protected "life, liberty, or property interest," plaintiff must clear the higher hurdle of showing deprivation of his constitutional rights *without due process of law.* "Nothing in [the Fourteenth] Amendment protects against all deprivations of life, liberty, or property by the State"; rather, "[t]he Fourteenth Amendment protects only against deprivations 'without due process of law.' " *Parratt*, 451 U.S. at 537, 68 L. Ed. 2d at 430 (citation omitted). When a plaintiff is deprived of a constitutionally protected interest by the unauthorized, tortious conduct of a state actor, statutory and common-law postdeprivation remedies can provide the process that is due. *Id.* at 541-44, 68 L. Ed. 2d at 432-34 (stating and applying the rule to a plaintiff's § 1983 procedural due process claim alleging deprivation of personal property); *Hudson v. Palmer*, 468 U.S. 517, 530-33, 82 L. Ed. 2d 393, 405-08 (1984) (applying the rule stated in *Parratt* to unauthorized, intentional deprivations of property); *see also Zinermon v. Burch*, 494 U.S. 113, 131-32, 108 L. Ed. 2d 100, 117-18 (1990) (extending the rule stated in *Parratt* to deprivations of liberty). In those cases, a Fourteenth Amendment procedural due process violation "is not complete until and unless" the State "refuses to provide a suitable postdeprivation remedy." *Hudson*, 468 U.S. at 533, 82 L. Ed. 2d at 407-08; *accord Edward Valves*, 343 N.C. at 434, 471 S.E.2d at 347 (contrasting the importance of available state remedies in "a Section 1983 action . . . brought for violation of procedural due process" with their inapplicability in "a Section 1983 action based on a violation of a substantive constitutional right").

The United States Supreme Court considers the existence of common-law tort actions, postdeprivation hearings, and other "pro-

---

6. While many of the cases cited in the following portion of this opinion make undifferentiated reference to the Due Process Clause of the Fourteenth Amendment, we understand these opinions address procedural due process.

cedural safeguards built into the statutory or administrative procedure of effecting the deprivation," when evaluating the adequacy of a State's postdeprivation remedies. *Zinermon*, 494 U.S. at 126, 108 L. Ed. 2d at 114. A plaintiff who has access to an adequate postdeprivation remedy does not sustain a constitutional injury under the Due Process Clause of the Fourteenth Amendment and cannot state a claim for relief on that basis under § 1983. *Parratt*, 451 U.S. 527, 68 L. Ed. 2d 420.

Malicious prosecution of an administrative action is a common-law tort in North Carolina. *Carver*, 262 N.C. at 351-52, 137 S.E.2d at 145 (stating the elements of the tort). Availability of a common-law tort action, standing alone, is an adequate postdeprivation remedy, even when successful litigation of the tort does not result in all the relief to which a plaintiff would be entitled under § 1983. *E.g.*, *Hudson*, 468 U.S. at 535, 82 L. Ed. 2d at 408; *Parratt*, 451 U.S. at 544, 68 L. Ed. 2d at 434. Ancillary safeguards that protect the procedural due process rights of an attorney before the DHC include the ability to file motions and participate in a contested hearing before that tribunal; the right to be represented by counsel; the ability to petition the North Carolina Court of Appeals for prerogative writs, including prohibition; appeal of right to that court; and the ability to petition the trial division to stay an order of discipline pending resolution of an appeal. N.C.G.S. § 84-28(d1), (h) (2007); *id.* § 84-30 (2007); N.C. R. App. P. 22; 27 NCAC 1B .0114 (June 2008). Because these postdeprivation remedies adequately safeguard plaintiff's right to procedural due process, we conclude that plaintiff has failed to state a procedural due process claim for which relief may be granted under 42 U.S.C. § 1983.

This holding does not mean that plaintiff cannot pursue a properly pleaded § 1983 action, nor does it mean that such an action cannot be filed until the conclusion of defendant's administrative action against plaintiff. A properly pleaded § 1983 action may proceed in parallel with an administrative action before a regulatory body. Nevertheless, in the case at bar, plaintiff sought to have defendant's actions enjoined on the grounds that it was acting maliciously and had violated his procedural due process rights. The elements of a tort action alleging malicious prosecution of an administrative proceeding are: "(1) the proceeding was instituted maliciously; (2) without probable cause; and (3) has terminated in favor of the person against whom it was initiated." *Carver*, 262 N.C. at 351-52, 137 S.E.2d at 144-45. Plaintiff's evidence at the hearing on the parties' summary

judgment motions not only failed to forecast that plaintiff could establish these elements, it demonstrated that plaintiff could not establish them. Accordingly, no injunction was justified.

For the reasons stated above, the dismissal entered by the Court of Appeals is vacated. However, while the DHC and the Superior Court of North Carolina have concurrent jurisdiction over attorney discipline matters, *N.C. State Bar v. Randolph*, 325 N.C. 699, 701, 386 S.E.2d 185, 186 (1989) (per curiam), the superior court division has original subject matter jurisdiction over constitutional claims, N.C.G.S. § 7A-245(a)(4) (2007). Accordingly, this matter is remanded to the Court of Appeals for further remand to Superior Court, Wilson County, with instructions to dissolve the permanent injunction, dismiss plaintiff's § 1983 substantive due process claim with prejudice, and dismiss plaintiff's § 1983 procedural due process claim without prejudice.

VACATED AND REMANDED.

Justice TIMMONS-GOODSON, dissenting.

Because I conclude that plaintiff has sufficiently alleged a § 1983 claim for vindictive prosecution to survive a Rule 12(b)(6) motion to dismiss, I respectfully dissent.

At the outset, I note that the only two questions presented by defendant's petition for discretionary review and allowed by the Court read as follows:

1. Did the Court of Appeals err in dismissing the State Bar's appeal of the injunction of Wilson County Superior Court as interlocutory?

2. Did the Superior Court of Wilson County have jurisdiction to permanently enjoin the State Bar's prosecution of an attorney disciplinary proceeding before the Disciplinary Hearing Commission?

The majority answers the question regarding the interlocutory nature of the appeal in the affirmative and explains that, while interlocutory, the appeal affects a substantial right that will be irreversibly injured or lost if not immediately appealed. The majority answers the question regarding the superior court's subject matter jurisdiction affirmatively. Thus, the inquiry should end.

GILBERT v. N.C. STATE BAR

[363 N.C. 70 (2009)]

However, the majority proceeds to discuss the failure of plaintiff to state a claim. That discussion is not necessary to answer the question regarding jurisdiction presented by the petition for discretionary review. Indeed, the majority has improperly expanded the scope of this appeal and ruled on a constitutional question in advance of the necessity of deciding it. In doing so, the majority fails to exercise the judicial restraint that we have so often proclaimed. At the heart of the majority's decision to reach the question is the concern that a ruling allowing plaintiff to pursue in the courts his § 1983 claim would permit attorneys to circumvent attorney disciplinary proceedings and obtain favorable treatment in their home districts. I am not persuaded, as we entrust our superior court judges with the ability to fairly adjudicate many weighty issues, including capital cases. Moreover, the instant case involves unique facts and procedural history not likely to arise in other disciplinary proceedings.

## Interlocutory Appeal

The majority concludes that defendant's interlocutory appeal implicates defendant's substantial right to execute its statutory duties, and that this right may be lost or prejudiced if appeal is not immediately taken. I disagree. To be sure, defendant has statutory duties to promulgate and enforce the rules of professional conduct, duties of significant importance to the protection of the public and the legal profession. N.C.G.S. § 84-23 (2007). Assuming that defendant's expeditious prosecution of *Gilbert III* implicates this substantial right, it is defendant's conduct, and not the interlocutory order in the instant case, that has unnecessarily delayed the prosecution of *Gilbert III*. It is a cardinal principle that a party may not avail itself of any error created by the party itself. *See, e.g., id.*, § 15A-1443(c) (2007) ("A defendant is not prejudiced . . . by error resulting from his own conduct.").

In the instant case, defendant generated the complaint on 12 September 2003, despite having access to all of the underlying information at least three years earlier. Although defendant had all the requisite information available to it prior to the institution of *Gilbert I*, defendant chose to proceed against plaintiff in piecemeal fashion, such that the instant proceeding is the seventh one to be litigated in various forums across the state. Thus, I find unpersuasive defendant's argument that immediate review of the trial court's interlocutory order is necessary in order to prevent the delayed prosecution of *Gilbert III*.

**GILBERT v. N.C. STATE BAR**

[363 N.C. 70 (2009)]

Moreover, defendant has failed to show that the delayed prosecution of *Gilbert III* pending the trial court's resolution of the instant case could result in irreversible injury or loss of its substantial right absent immediate review. *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990). Indeed, defendant cannot make such a showing. As defendant's own delay in filing the complaint in *Gilbert III* for approximately three years indicates, defendant is unlikely to suffer a loss or irreversible injury merely due to the passage of time.

While conceding that an injunction is not an irreversible injury, the majority concludes that, because plaintiff has failed to properly plead his § 1983 claims, defendant should not be made to await a final judgment. This reasoning incorrectly focuses on the merits of plaintiff's underlying action instead of the possible injury to or loss of defendant's substantial rights. Yet the strength of defendant's appeal on the merits does not dictate whether defendant may immediately appeal from an interlocutory order. As we have repeatedly held, the trial court's denial of a motion to dismiss will not entitle the defendant to immediate appeal of an interlocutory order, regardless of the merits of the motion to dismiss. *E.g.*, *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 437-38, 206 S.E.2d 178, 181 (1974); *Cox v. Cox*, 246 N.C. 528, 531, 98 S.E.2d 879, 883 (1957). Consequently, defendant is not entitled to immediate review of the trial court's order, and this interlocutory appeal should be dismissed.

### Subject Matter Jurisdiction

The only substantive issue for which we allowed discretionary review in this case was whether the superior court had subject matter jurisdiction to hear plaintiff's § 1983 claim during the pendency of *Gilbert III* in the DHC. After recognizing that the superior court has subject matter jurisdiction in this case, the majority inexplicably proceeds to transform defendant's motion to dismiss for lack of subject matter jurisdiction into a motion to dismiss for failure to state a claim. In so doing, the majority unnecessarily expands the scope of this appeal. As the majority has addressed the issue, however, I do so as well, and I conclude that plaintiff's complaint adequately states a § 1983 claim for deprivation of substantive due process based upon allegations of vindictive prosecution by defendant.

### Vindictive Prosecution

On review of a motion to dismiss for failure to state a claim under Rule 12(b)(6), we examine

**GILBERT v. N.C. STATE BAR**

[363 N.C. 70 (2009)]

"whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. In ruling upon such a motion, the complaint is to be liberally construed, and the trial court should not dismiss the complaint unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief."

*Shepard v. Ocwen Fed. Bank*, 361 N.C. 137, 139, 638 S.E.2d 197, 199 (2006) (quoting *Meyer v. Walls*, 347 N.C. 97, 111-12, 489 S.E.2d 880, 888 (1997) (alteration in original)).

To state a claim for relief under § 1983, the plaintiff must allege (1) the deprivation of a right under the federal constitution or statute (2) by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 101 L. Ed. 2d 40, 48-49 (1988). A vindictive prosecution is one that is designed to punish an individual for exercising statutory or constitutional rights to appeal or seek collateral relief in a prior proceeding. It is well-established that vindictive prosecution violates due process. *See, e.g.*, *United States v. Goodwin*, 457 U.S. 368, 372, 73 L. Ed. 2d 74, 80 (1982); *Bordenkircher v Hayes*, 434 U.S. 357, 363, 54 L. Ed. 2d 604, 610 (1978); *Blackledge v. Perry*, 417 U.S. 21, 29, 40 L. Ed. 2d 628, 635 (1974); *North Carolina v. Pearce*, 395 U.S. 711, 724, 23 L. Ed. 2d 656, 668 (1969).

The majority incorrectly concludes that substantive due process does not protect individuals from vindictive prosecutions of administrative matters. Neither the Supreme Court of the United States nor any other federal court has issued such a holding. To the contrary, federal courts have applied the doctrine to administrative and regulatory proceedings. *See, e.g.*, *Nat'l Eng'g & Contr'g Co. v. Herman*, 181 F.3d 715, 722-23 (6th Cir.) (stating the elements of vindictive prosecution, which petitioner asserted as a defense to administrative proceedings by the Occupational Safety and Health Review Commission for violations of OSHA regulations), *cert. denied*, 528 U.S. 1045, 145 L. Ed. 2d 481 (1999); *Futernick v. Sumpter Twp.*, 78 F.3d 1051, 1056 n.7 (6th Cir.) (describing the elements of vindictive prosecution in the context of a regulatory proceeding), *cert. denied*, 519 U.S. 928, 136 L. Ed. 2d 215 (1996), *overruled on other grounds by*, *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 145 L. Ed. 2d 1060, 1063 (per curiam) (2000); *United States v. One 1985 Mercedes*, 917 F.2d 415, 420 (9th Cir.) (stating that vindictive prosecution claims may raise due process and equal protection issues in civil forfeiture cases).

Indeed, this Court would be the first high court in the nation to conclude that the rule against vindictive prosecution does not apply to administrative proceedings. The only limitation that the Supreme Court of the United States has placed upon the doctrine has been the refusal to apply a presumption of vindictiveness in all cases. *See, e.g., Alabama v. Smith,* 490 U.S. 794, 799, 104 L. Ed. 2d 865, 872 (1989); *Goodwin,* 457 U.S. at 384, 73 L. Ed. 2d at 87. Even in such cases, however, the proponent may establish actual vindictiveness through objective evidence. *Goodwin,* 457 U.S. at 384, 73 L. Ed. 2d at 87.

The import of the rule against vindictive prosecution is that the State may not punish an individual for the exercise of his statutory or constitutional rights. Thus, the central question in determining whether the rule applies to this case is whether attorney disbarment is punishment in the constitutional sense. The answer to this question is well-established in Supreme Court precedent: "[d]isbarment, designed to protect the public, is a punishment or penalty imposed on the lawyer." *In re Ruffalo,* 390 U.S. 544, 550, 20 L. Ed. 2d 117, 122 (1968) (citations omitted). Consequently, attorneys in such proceedings are entitled to certain constitutional protections. *See, e.g., id.,* 390 U.S. at 550, 20 L. Ed. 2d at 122 (holding that attorney disbarment proceedings are quasi-criminal and that attorneys are entitled to procedural due process); *Spevack v. Klein,* 385 U.S. 511, 516, 17 L. Ed. 2d 574, 578 (1967) (holding that attorneys are entitled to the privilege against self-incrimination because "[t]he threat of disbarment and the loss of professional standing, professional reputation, and of livelihood are powerful forms of compulsion to make a lawyer relinquish the privilege"). Because attorney disbarment amounts to punishment in the constitutional sense, I conclude that the vindictive prosecution of attorney disbarment proceedings implicates due process, notwithstanding the State's labeling of such proceedings as "administrative." The question then becomes whether plaintiff has alleged sufficient facts in his complaint to state a claim for vindictive prosecution.

Turning to the pleadings in the instant case, plaintiff's alleges, *inter alia,* the following:

> By attempting through Gilbert III to secure a disciplinary sanction . . . and by doing so in apparent bad faith and as part of a continuing effort to menace and intimidate the Plaintiff, and to exact a price for the Plaintiff's having exercised his statutory and constitutional rights to defend himself zealously against, and to seek appellate review . . . the State Bar has engaged, and is con-

tinuing to engage, in a **vindictive prosecution** of the Plaintiff in violation of the United States and North Carolina constitutions.

. . . .

By attempting through <u>Gilbert III</u> to secure a disciplinary sanction . . . and by doing so on the basis of intentional misrepresentations of fact, in apparent bad faith, and as part of a continuing effort to menace and intimidate the Plaintiff, and to exact a price for the Plaintiff's having exercised his statutory and constitutional rights to defend himself zealously against, and to seek appellate review . . . the State Bar has deprived the Plaintiff of his right to substantive due process.

In support of these assertions, plaintiff alleges that defendant knowingly made false allegations in the underlying grievance in *Gilbert III* and notified plaintiff's attorney of its intent to deal with plaintiff in such a way as to discourage other attorneys from similarly obtaining writs of supersedeas. Plaintiff also alleges that *Gilbert III* is the latest in a series of "sharp practices" against plaintiff that include the following: (1) circumventing the procedures for instituting attorney disciplinary hearings; (2) deterring an attorney witness from testifying for plaintiff in *Gilbert I* by filing a grievance and issuing a subpoena for that attorney's trust account records days before the hearing; (3) attempting to impeach another defense witness in *Gilbert I* by suggesting that the witness was convicted of crimes, which defendant knew to be untrue; (4) knowingly making material misrepresentations of fact to this Court in oral arguments in *Gilbert I*; and (5) filing a grievance in *Gilbert III* that contained knowing misrepresentations of fact.

Treating the allegations in plaintiff's complaint as true, as is required on review of a motion to dismiss under Rule 12(b)(6), plaintiff's complaint sufficiently alleges a deprivation of substantive due process. Plaintiff clearly had statutory rights to seek appellate review and obtain writs of prohibition from the DHC's disciplinary order in *Gilbert I*.[7] Plaintiff alleges that defendant instituted *Gilbert III* to punish him for having exercised these statutory rights in a prior disciplinary proceeding. The law is well-established that the State may

---

7. An attorney who is a party to a disciplinary proceeding has a statutory right to seek appellate review of the DHC's final order in the Court of Appeals. N.C.G.S. § 84-28(h). The attorney may also appeal from any decision of the Court of Appeals in which there is a dissent. *Id.*, § 7A-30(2) (2007). As part of the appellate process, the attorney may obtain writs of supersedeas to stay the execution or enforcement of any judgment or order, including those of the DHC. N.C. R. App. P. 23.

not prosecute an individual for exercising his statutory or constitutional rights to appeal or seek collateral relief. *Goodwin*, 457 U.S. at 372, 73 L. Ed. 2d at 80. Such conduct by the State would amount to a deprivation of substantive due process. *Id.* Plaintiff has adequately alleged a claim for relief under § 1983. In concluding that plaintiff's complaint contains sufficient allegations to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, I express no opinion as to whether there is merit to plaintiff's claim. I conclude only that having sufficiently *alleged* a § 1983 claim, the attorney in this case is entitled to his day in court, as the countless attorneys of our state routinely assist the public in doing.

Having abandoned judicial restraint, the majority not only expands the scope of this appeal but also incorrectly analyzes plaintiff's complaint as one for malicious prosecution. In his complaint, plaintiff seeks relief for *vindictive prosecution* only and makes no mention of either the cause or elements of malicious prosecution. The essence of a malicious prosecution is the institution of legal proceedings with malice and without probable cause. *See Best v. Duke Univ.*, 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994); *Greer v. Skyway Broad. Co.*, 256 N.C. 382, 389, 124 S.E.2d 98, 103 (1962). The gravamen of plaintiff's complaint is that defendant instituted *Gilbert III* to punish him for exercising his statutory rights to appeal and obtain the writs of supersedeas, not that defendant lacked probable cause and that *Gilbert I* or *II* terminated in his favor. I find no basis in the record for the majority's treatment of plaintiff's complaint as one for malicious prosecution.

In sum, because the interlocutory order in the instant case does not affect a substantial right that may be lost or irreversibly injured absent immediate review, I would affirm the decision of the Court of Appeals to dismiss the instant appeal. Assuming *arguendo* that the merits of defendant's appeal are properly before this Court, I conclude that the trial court correctly denied defendant's motion to dismiss because (1) the superior court had subject matter jurisdiction over plaintiff's § 1983 actions and (2) plaintiff adequately alleged a deprivation of substantive due process. I therefore respectfully dissent.

Justice HUDSON dissenting.

Because I conclude that the North Carolina State Bar has failed to show that this interlocutory appeal adversely affects a substantial

**GILBERT v. N.C. STATE BAR**

[363 N.C. 70 (2009)]

right, I would hold that the Court of Appeals correctly dismissed defendant's appeal and that discretionary review was improvidently allowed. Therefore I respectfully dissent.

Without citing authority, the majority concludes that "defendant's right to carry out its duties to investigate and [discipline lawyers] is substantial." The majority then acknowledges that the mere fact that defendant has been enjoined is not deprivation of a substantial right, but nonetheless concludes that "because the trial court's permanent injunction may prevent defendant from executing its statutory duties while plaintiff pursues an improperly pleaded action, an injury arises."

The only authority in support of this latter proposition is a citation to a 1977 opinion from the Court of Appeals concerning an injunction against the North Carolina Board of Transportation, barring it from removing a billboard owned by the plaintiff. *Freeland v. Greene*, 33 N.C. App. 537, 540, 235 S.E.2d 852, 854 (1977). While the Court of Appeals there stated that it was considering the Board's interlocutory appeal of the injunction because it "adversely affect[ed] important rights in connection with the performance by them of [statutory] duties," it provided no explanation. As such the *Freeland* opinion, which is not binding on this Court, gives little guidance on the analysis of this issue. The court's holding then rested on the conclusion that "plaintiff failed to exhaust his administrative remedies, [such that] this action should have been dismissed." *Id.* at 544, 235 S.E.2d at 856.

Here the Court of Appeals has described the substantial right at stake as defendant's ability to "promulgate[] rules of professional conduct to protect the public from unethical behavior by attorneys. . . .[,] conduct hearings and impose penalties in disciplinary matters." As noted by the court in its decision below, "defendant fails to articulate how delaying its appeal until the case is resolved will jeopardize its ability to enforce the Rules of Professional Conduct. Nor does defendant identify any circumstance making review of the particular claim, which alleges that plaintiff mishandled $290 in 1998, of such urgency that the appeal cannot be delayed," until the issue of damages has been determined. *Gilbert v. N.C. State Bar*, 180 N.C. App. 690, 639 S.E.2d 143, 2006 WL 3718000, at *3 (2006) (unpublished).

Likewise, my review finds no stated explanation of how the trial court's order enjoins defendant's ability to discharge its statutory

duties in general, as opposed to pursuing its specific complaint against plaintiff. Neither does the trial court's order contain any broad prohibition against defendant carrying out its statutory duties. Instead, the trial court enjoined defendant from continuing its prosecution of plaintiff in one specific action to recover $290 in client funds allegedly misused by plaintiff. In so ordering, the trial court found defendant's pursuit of that action to be "but the latest in a series of unremitting, increasingly disturbing, and, ultimately, unlawful acts and practices that have been designed and intended by the State Bar to . . . punish and retaliate against the Plaintiff . . . and otherwise harass, menace and intimidate the Plaintiff."

For those reasons, as well as a number of other fact-specific bases discussed in its seventy-seven page order, the trial court granted summary judgment to plaintiff on his claims for vindictive prosecution and violations of his rights to substantive and procedural due process, as related only to the most recent action brought by defendant against him. In addition, the trial court permanently enjoined defendant from "prosecuting or proceeding further with the prosecution of the claims and charges asserted in the case" and from publishing in any form "the past, present, or future pendency of the disciplinary action," specified by file number, against plaintiff. This language very precisely targets and enjoins only defendant's actions against plaintiff and in no way impedes or restricts its ability to discharge its general statutory duties.

More importantly, defendant has failed to articulate what injury will result from any deprivation of a substantial right, if it is not corrected now, prior to final judgment as to all claims and controversies between the parties. See, e.g., Sharpe v. Worland, 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999) (" 'Essentially a two-part test has developed—the right itself must be substantial and the deprivation of that substantial right must potentially work injury . . . if not corrected before appeal from final judgment.' " (quoting Goldston v. Am. Motors Corp., 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990) (alteration in original))); Veazey v. City of Durham, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950) ("A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." (citations omitted)); see also Jeffreys v. Raleigh Oaks Joint Venture, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994) ("It is not the duty of this Court to construct arguments for or find support for appellant's right to appeal from an interlocutory order; instead, the appellant has the burden of show-

ing this Court that the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits." (citations omitted)).

It is also noteworthy that the trial judge here explicitly declined to certify this interlocutory appeal for our immediate review pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure. *See* N.C.G.S. § 1A-1, Rule 54(b) (2007); *Gilbert,* 2006 WL 3718000, at *2 ("The defendant asked the court to certify the case for immediate appellate review, and the trial court expressly denied this request . . . ."). Furthermore, this is not a case in which the order has deprived the appellant of one of its substantive legal claims. *See, e.g., Charles Vernon Floyd, Jr. & Sons, Inc. v. Cape Fear Farm Credit, ACA,* 350 N.C. 47, 49, 51, 510 S.E.2d 156, 158, 159 (1999) (holding that the trial court's election-of-remedies order "involved the merits and affected the judgment" because it "deprived [the] plaintiffs of one of their claims"), *overruled in part on other grounds by Dep't of Transp. v. Rowe,* 351 N.C. 172, 176, 521 S.E.2d 707, 710 (1999). Defendant could still raise its issues pertaining to the trial court's order after the hearing on damages. Finally, defendant does not face the possibility here of inconsistent verdicts or outcomes at trial. *See, e.g., Green v. Duke Power Co.,* 305 N.C. 603, 608, 290 S.E.2d 593, 596 (1982) (allowing an interlocutory appeal due to "the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue.").

Instead, the sole effect of our dismissing this appeal as interlocutory—beyond defendant perhaps having to wait for any recovery—would be simply to delay a determination of the substantive merits of defendant's arguments until appeal after entry of an order on damages. Simple delay does not amount to a deprivation or impairment of a substantial right; rather, preventing such delays underpins our general reluctance to hear interlocutory appeals. *See Veazey,* 231 N.C. at 363, 57 S.E.2d at 382 ("There is no more effective way to procrastinate the administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders."); *State ex rel. Edmisten v. Fayetteville St. Christian Sch.,* 299 N.C. 351, 358, 261 S.E.2d 908, 913 ("The statutes and rules governing appellate review are more than procedural niceties. They are designed to streamline the judicial process, to forestall delay rather than engender it."), *appeal dismissed,* 449 U.S. 807, 66 L. Ed. 2d 11 (1980). Such a holding would also be consistent with past decisions of this Court. *See, e.g., id.* at 355, 261 S.E.2d at 911 (dis-

missing as interlocutory an appeal from a denial of a motion to dismiss and the grant of a preliminary injunction in part because the denial of a motion to dismiss "merely serves to continue the action then pending. No final judgment is involved, and the disappointed movant is generally not deprived of any substantial right which cannot be protected by timely appeal from the trial court's ultimate disposition of the entire controversy on its merits.").

The majority's holding here goes beyond our long-standing jurisprudence describing the types of substantial rights, and possible impairment of those rights, that justify appellate review of an interlocutory order. The course it sets potentially opens floodgates that should remain closed. As such, I respectfully dissent.